418 A.2d 637

**COMMONWEALTH of Pennsylvania**

v.

**William SCHWARTZ, Appellant.**

Superior Court of Pennsylvania.

Argued March 19, 1979.

Filed Feb. 1, 1980.

Alan Ellis, State College, for appellant.

Thomas F. Meehan, III, Assistant District Attorney, Bellefonte, for Commonwealth, appellee.

Before PRICE, SPAETH and LIPEZ, JJ.

SPAETH, Judge:

We agree with Part I of the dissenting opinion, which holds that any ex parte information received by a judge before sentencing should be disclosed to a defendant so that he may have an opportunity to examine it and dispute its accuracy. We do not agree, however, with Part II of the dissenting opinion. In our opinion the sentence should be vacated and the case remanded for resentencing, for two reasons: 1) it reasonably appears from the record that the sentencing judge relied on the ex parte information; and 2) the judge imposed a $10,000 fine without determining whether appellant was able to pay it.

1

The dissent correctly cites *Commonwealth v. Bethea*, 474 Pa. 571, 379 A.2d 102 (1977), as defining how we should review the sentence in this case. In *Bethea*, the Supreme Court stated:

> In deciding whether a trial judge considered only permissible factors in sentencing a defendant, an appellate court must, of necessity, review all of the judge's comments. Moreover, in making this determination it is not necessary that an appellate court be convinced that the trial judge in fact relied upon an erroneous consideration; it is sufficient to render a sentence invalid if it reasonably appears from the record that the trial court relied in whole or in part upon such a factor.
>
> 474 Pa. 580, 379 A.2d at 106–107

Having cited *Bethea*, however, the dissent fails to apply it. After examining the record, the dissent concludes that "there is ample support for the imposed sentence, which was well within the terms of the accepted plea bargain." Dis-

sent at 125–126. In *Bethea,* the Supreme Court did not look to see whether there was "ample support" in the record for the imposed sentence, but rather whether "it reasonably appear[ed] from the record that the trial court relied in whole or in part upon such [an impermissible] factor." 474 Pa. at 580, 379 A.2d at 106–107.

Here, after sentencing appellant, the sentencing judge stated:

> ▮t is obvious from the recital of the facts which I have had . . . that you were engaged in the business of drug traffic and this is something that–in fact, the quantities that you were selling and the frequency of the sales make it very apparent to this Court that you were a dealer . . . .
>
> I have made a large fine because I think the enormity of this crime deserves a large fine. You were engaged in the narcotic traffic, and therefore, I feel that just placing you on county probation or giving you a minimal fine is not commensurate with the seriousness of the offense that you have committed.

The dissent says that the judge was justified in making these comments because of the nature and frequency of appellant's drug sales (eight sales of quaaludes or marijuana within a month and–a–half period). That may well be so, but it does not answer the question of whether it reasonably appears from the record that the judge relied, *not only* on the evidence of the nature and frequency of appellant's drug sales–which evidence was properly before him–but *also* on the information that he had received ex parte–which information was *not* properly before him.

▮ When the *Bethea* test is applied to the record before us, it is apparent that the sentence should be vacated. On appellant's motion for modification of sentence, the sentencing judge conceded that before the sentencing proceeding

> [the Court] was informed that the plea bargain was opposed by the prosecuting officers, who felt that the heavy involvement of the Defendant in the drug traffic warranted a penalty more severe than probation.

At this time the Court was also informed that the Defendant was one of the larger narcotic dealers in the State College area, involved in transactions of large sums of money.

*On the basis of this information* the Court decided to reject the plea bargain, permit the withdrawal of the proposed guilty plea, and have the defendant proceed to trial. However, it appeared that the District Attorney's office had failed to apply for an appropriate extension of time under Pa.R.Crim.P. 1100, and the 180–day period had elapsed.

Faced with the alternative of permitting an admitted narcotics distributor *to go free,* or honor an ill–advised plea bargain, the Court chose the latter, and reluctantly accepted the plea bargain.

Slip op. at 1–2. (emphasis added)

Given the tenor of these comments, we think it reasonably appears that in sentencing appellant, the sentencing judge relied in part on the ex parte information supplied him by State Police. This conclusion, which seems to us only common sense, is corroborated by the size of the fine, and the sentencing judge's comment that a "large" fine was deserved because appellant was "engaged in the narcotic traffic."

The dissent dismisses the argument that the sentencing judge erred in failing to determine appellant's ability to pay the fine by noting, in footnote 9 of its opinion, that appellant waived a pre–sentence report, "which presumably would have included such information," and by shifting to appellant's counsel the burden of "elaborat[ing] on appellant's financial background."

We do not understand why counsel should do what the dissent says, when counsel does not know what fine, if any, will be imposed. In any event, as we read the Sentencing Code, the *sentencing judge* was required to determine, before imposing the fine, that appellant was able to pay it. 18 Pa.C.S.A. § 1326 states:

(c) *Exception.*–The court shall not sentence a defendant to pay a fine unless it appears of record that:

(1) the defendant is or will be able to pay the fine;

. . . . .

(d) *Financial resources.*–In determining the amount and method of payment of a fine, the court shall take into account the financial resources of the defendant and the nature of the burden that its payment will impose.

This provision parallels Section 2.7(c) of the American Bar Association's Standards Relating to Sentencing Alternatives and Procedures (Approved Draft, 1968), which states:

In determining whether to impose a fine and its amount, the court should consider:

(i) the financial resources of the defendant and the burden that payment of a fine will impose, with due regard to his other obligations;

(ii) the ability of the defendant to pay a fine on an installment basis or on other conditions to be fixed by the court;

The commentary to the A.B.A. Standards points out that to require the sentencing judge to determine the defendant's ability to pay a fine will result in far more rational sentencing. If it appears that the defendant cannot pay a fine, the judge will have to consider alternative penalties. If the judge does not at the outset determine the defendant's ability to pay a fine, he will often be forced to imprison him at some later point, when he fails to pay the fine. However, before a defendant may be imprisoned for not paying a fine, he must be given an opportunity to establish that he is unable to pay the fine. *Commonwealth ex rel. Parrish v. Cliff*, 451 Pa. 427, 304 A.2d 158 (1973); *Commonwealth v. Shaeffer* 228 Pa.Super. 734, 311 A.2d 361 (1973); Pa.R. Crim.P. 1407(a). If a defendant establishes that he is indigent, he will be allowed to make payments in reasonable installments. 451 Pa. at 434, 304 A.2d at 161. Thus, rather than waiting until the defendant is brought before the court for not paying a fine, it is far more rational to determine the defendant's ability to pay at the time the fine is imposed.

■ Here, all the sentencing judge knew about appellant's financial background was that he had sold $980 worth of drugs to the undercover agents the previous year and was currently working with his father in the construction industry, "bringing home approximately $150 per week." N.T. at 12, 13 (August 28, 1978, Guilty Plea hearing). This was hardly enough information to make an intelligent finding as to appellant's ability to pay the fine.

The sentence is vacated and the case is remanded for resentencing in accordance with this opinion.

PRICE, J., files a dissenting opinion.

PRICE, Judge, dissenting:

This appeal raises the question of whether a sentencing judge may utilize information adverse to a defendant, gained ex parte, and not disclosed at the time of sentencing. Although I answer that question in the negative and determine such a practice to be repugnant to a defendant's due process rights, I would hold that under the facts of this case, the information was not so utilized.

On August 28, 1978, appellant, pursuant to a plea bargain wherein he was to receive a probationary term and a fine determined by the court, entered a plea of guilty on four counts each of delivery of quaaludes and delivery of marijuana.[1] Prior to accepting the sentence, the Centre County court

> "inquired of the prosecuting officers, who were undercover agents of the Pennsylvania State Police, whether they acquiesced in the plea bargain. Upon being informed that they not only were uninformed of this proposed plea bargain, but were actively opposed to it, the Court thereupon recessed to determine the basis for the opposition and the reason for the reduction in charges.
>
> The Court was informed that the plea bargain was opposed by the prosecuting officers, who felt that the

---

1. The Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, No. 64, § 13(a)(30), *as amended*, 35 P.S. § 780–113(a)(30).

heavy involvement of the Defendant in the drug traffic warranted a penalty more severe than probation.

At this time the Court was also informed that the Defendant was one of the larger narcotics dealers in the State College area, involved in transactions of large sums of money." (Opinion at 1–2).

The court's initial reaction was to deny the "ill–advised" plea bargain on the basis of this information (Opinion at 2), but later "reluctantly" accepted it when advised that the Rule 1100[2] limit had already been exceeded. Following appellant's waiver of a pre–sentence investigation, the court sentenced him to a three year term of probation, and ordered him to pay a fine of $10,000, the costs of prosecution totalling $59.50, and make restitution in the amount of $980.

Appellant filed a timely motion to modify the sentence pursuant to Pa.R.Crim.P. 1410, and argument on the motion was held in chambers on September 25, 1978. During the hearing, appellant alleges that the sentencing judge informed him for the first time that the sentence was based, in part, on the information provided by the prosecuting officers. The motion was denied and appellant now contends that the court erred in employing this ex parte information.

## I

A sentencing judge "may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States v. Tucker*, 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972). Nevertheless, the discretion of a sentencing judge is not unfettered; a defendant has the right to minimal safeguards to ensure that the sentencing court does not rely on factually erroneous information, and any sentence predicated on such false assump-

2. Pa.R.Crim.P. 1100(a)(2) provides:

"Trial in a court case in which a written complaint is filed against the defendant after June 30, 1974 shall commence no later than one hundred eighty (180) days from the date on which the complaint is filed."

tions is inimicable to the concept of due process. *United States v. Tucker, supra; Townsend v. Burke,* 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948). Obviously, the probability of receiving accurate pre–sentence information is considerably enhanced when the defendant has an opportunity to review and dispute the facts and allegations available to the sentencing judge. Consequently, in *Commonwealth v. Phelps,* 450 Pa. 597, 301 A.2d 678 (1973), our supreme court, pursuant to its supervisory powers, held that the interests of criminal justice are best served by the appropriate disclosure of relevant portions of the pre–sentence report not secured on a promise of confidentiality. In adopting the standards for sentencing proposed by the American Bar Association,[3] the court considered, and rejected, arguments purporting to demonstrate that disclosure would impede the defendant's rehabilitation, reduce reliable sources of information, and unduly delay the sentencing process. It recognized a justifiable concern that a harsh sentence might be imposed because a pre–sentence report, unreviewed by the defendant, misrepresented his personal history.

"Without such disclosure, defendant and his counsel are unable to determine whether the sentencing judge relied on unconstitutionally obtained convictions, see *United States v. Tucker,* supra, illegally seized evidence, see *Verdugo v. United States,* 402 F.2d 599, 613 (9th Cir. 1968), cert. denied, sub nom. *Turner v. United States,* 397 U.S. 925, 90 S.Ct. 931, 25 L.Ed.2d 105 (1970), unconstitutionally obtained confessions, see *United States ex rel. Brown v. Rundle,* 417 F.2d 282, 284–85 (3d Cir. 1969), or other misinformation which adversely affects the defendant's interest." *Commonwealth v. Phelps, supra,* 450 Pa. at 609, 301 A.2d at 683–84.[4]

**3.** *See* ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Sentencing Alternatives and Procedures § 4.4 (Approved Draft, 1968). Disclosure of pre–sentence reports in Pennsylvania is now controlled by Pa.R.Crim.P. 1404.

**4.** This policy of pre–sentence report disclosure has been accepted in numerous jurisdictions by either judicial decree or legislative mandate. *See, e. g., State v. Pierce,* 108 Ariz. 174, 494 P.2d 696 (1972);

Without reiterating the arguments analyzed in *Phelps*, the concept of disclosure appears salutary. If we are to burden the trial judge with the considerable responsibility of imposing sentence, we must ensure that he has available an accurate profile of the defendant. Reliance on erroneous information not only infringes due process rights, but makes a mockery of this Commonwealth's insistence on individual sentencing and our supreme court's directive that the sentencing judge's discretion be based on "sufficient and accurate information." *Commonwealth v. Martin*, 466 Pa. 118, 131–32, 351 A.2d 650, 657 (1976).

Of course, we are here not dealing with a pre–sentence report. Indeed, appellant specifically waived just such a report.[5] Nevertheless, the policy consideration is militating

*Guglielmo v. State*, 318 So.2d 526 (Fla.1975); *People v. Martin*, 393 Mich. 145, 224 N.W.2d 36 (1974); *Heidmark v. Warden, Nevada State Prison*, 91 Nev. 594, 540 P.2d 111 (1975); *Rosado v. State*, 70 Wis. 280, 234 N.W.2d 69 (1975); see generally Annot., Defendant's Right to Disclosure of Presentence Report, 40 A.L.R.3d 681 (1971). Rule 32 of the Federal Rules of Criminal Procedure leaves the matter within the sound discretion of the trial court. *See United States v. Bernstein*, 546 F.2d 109 (5th Cir. 1977); *United States v. Alexander*, 498 F.2d 934 (2d Cir. 1974); *United States v. Johnson*, 495 F.2d 377 (4th Cir.), *cert. denied*, 419 U.S. 853, 95 S.Ct. 95, 42 L.Ed.2d 84 (1974) (district judges urged to adopt liberal policy of releasing contents of pre–sentence reports). Although the United States Supreme Court has not ruled definitively on whether disclosure is constitutionally required, several decisions appear to embrace the concept of disclosure. *See, e. g., Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966); *Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948). The Court has previously upheld the constitutionality of reliance upon pre–sentence reports in sentencing. *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949).

5. The Commonwealth advances two arguments which it contends militate in favor of our finding appellant's objections waived. I find neither of these to be determinative. First, appellant's own waiver of the pre–sentence report cannot be construed as a waiver of his objection to the reception of ex parte information. By dispensing with the former, appellant in effect announced that he desired to be sentenced solely on the facts appearing of record.

Second, although appellant did not specifically raise the issue of the ex parte information in his motion to modify, such was hardly possible because he was allegedly not aware of the information until the September 25th hearing. Moreover, I do not deem it determinative that the opinion of the common pleas court does not specifically mention or refute that objection.

in favor of disclosing sentencing information not contained in a pre–sentence report are substantially similar and indeed more persuasive. The prophylactic measure of pre–sentence report disclosure would be seriously compromised if the sentencing judge were permitted to surreptitiously gather information outside of that report without affording the defendant an opportunity to verify its accuracy. Thus, the Eighth Circuit Court of Appeals opined that

> " [w]hile there is some question as to whether presentence reports must be disclosed, these ex parte conversations were *not* a pre–sentence report and there is considerable authority that the court should not consider any other ex parte information in sentencing without making disclosure. [citations omitted]. Information unfavorable to the accused on the issue of sentencing ought to be disclosed to defense counsel so that inaccuracies may be discovered."
> *Rinehart v. Brewer*, 561 F.2d 126, 133 (8th Cir. 1977). (emphasis in original).

The objectionable conversations in *Rinehart* were conducted by the trial judge with a physician who had examined the defendant at the court's request. During the interview, information was revealed that went beyond the doctor's written report to the court, and that was subsequently employed in determining the sentence. On appeal, the sentence was vacated as a direct result of this non–disclosure. Other jurisdictions have similarly recognized the impropriety of a judge sentencing on out–of–court information, communication, or investigation, *e. g., State ex rel. Greely v. District Court of the Fourth Judicial District*, Mont., 590 P.2d 1104 (1979); *In re Calhoun*, 17 Cal.3d 75, 130 Cal.Rptr. 139, 549 P.2d 1235 (1976); *State v. Giebler*, 22 Wash.App. 640, 591 P.2d 465 (1979), and this court has previously noted that reliance on unverified hearsay outside of the record is impermissible. *Commonwealth v. Schwartz*, 267 Pa.Super. 170, 406 A.2d 573 (1979); *Commonwealth v. Cruz*, 265 Pa.Super. 474, 402 A.2d 536 (1979).

The courts of other jurisdictions have taken particular pains to condemn ex parte submissions to the sentencing

judge. *See United States v. Bass*, 535 F.2d 110 (D.C. Cir. 1976); *United States v. Perri*, 513 F.2d 572 (9th Cir. 1975); *United States v. Huff*, 512 F.2d 66 (5th Cir. 1975); *United States v. Rosner*, 485 F.2d 1213 (2d Cir. 1973), *cert. denied*, 417 U.S. 950, 94 S.Ct. 3080, 41 L.Ed.2d 672 (1974). In *United States v. Solomon*, 422 F.2d 1110 (7th Cir. 1970), for example, an Assistant United States Attorney prepared a confidential memo for the district court's *in camera* inspection relative to the government's request to revoke the defendant's bail. The contents of the memo were not disclosed to either the defendant or his counsel. On appeal following revocation, the court of appeals recognized the peculiar sensitivity of the situation:

> " [I]n the present case, the prosecutor's adversary position in the criminal proceedings, inevitably raising doubts concerning his complete impartiality and accuracy, distinguishes the treatment of prosecutorial reports from those supplied by 'professional neutrals such as a probation officer.' *Haller v. Robbins*, 409 F.2d 857, 859 (1st Cir. 1969)." *Id.* at 1121.

If the pre–sentence reports prepared by 'professional neutrals' at the board of probation need be disclosed and scrutinized for errors, then *a fortiori* the information proffered by the prosecuting officials need be disclosed and examined.

I would hasten to add, however, that this right of disclosure and concomitant right to rebuttal does not require that the sentencing hearing be transformed into a second trial.[6] *See United States v. Barnett*, 587 F.2d 252 (5th Cir. 1979) (sufficient if sentencing judge allows comment on the alleged factual inaccuracy); *United States v. Expinoza*, 481 F.2d 553 (5th Cir. 1973). This is in accord with the comment to Pa.R.Crim.P. 1404 which, while requiring the disclosure of pre–sentence reports, indicates that its purpose is not to "encourage formal litigation over these reports." Rather, upon timely objection, the court might require the govern-

---

**6.** *See* Note, Procedural and Substantive Fairness in Sentencing: An Unnecessarily Unappealing Subject to Pennsylvania Higher Courts, 82 Dick.L.Rev. 379, 387–88 (1978).

ment to submit some verification of its claims, or itself find existing factual support or indicia of reliability for the allegations. *United States v. Bass, supra; Commonwealth v. Cruz, supra.*[7] I would demand only that the information received ex parte be disclosed and that the defendant have an opportunity to examine it and dispute its accuracy.[8]

## II

Having concluded that the information supplied by the agents could not have been utilized in considering the sentence, I must now decide whether it was in fact so employed. Obviously, if no use was made of the information, appellant

7. The court should not, however, place the total burden of refutation upon appellant, accepting as true the allegations of the prosecuting officers unless disproved. This question was addressed in *United States v. Weston,* 448 F.2d 626 (9th Cir. 1971), *cert. denied,* 404 U.S. 1061, 92 S.Ct. 748, 30 L.Ed.2d 749 (1972), in which the district court imposed a maximum sentence on the defendant based on information that she was, *inter alia,* a chief supplier of drugs to the western Washington area. The trial judge stated that if counsel could obtain facts to contradict the pre-sentence report, the court would reconsider the sentence. The Court of Appeals reversed that decision and disagreed with the shifting of the burden:

"This will not do. It is tantamount to saying that once a defendant has been convicted of offense A, narcotics agents can say to the probation officer, and the probation officer can say to the judge, 'We think that she is guilty of much more serious offense B, although all we have to go on is an informer's report,' and the judge can then say to the defendant, 'You say it isn't so; prove that to me!'; In addition to the difficulty of 'proving a negative,' we think it a great miscarriage of justice to expect Weston or her attorney to assume the burden and expense of proving to the court that she is not the large scale dealer that the anonymous informant says she is." *Id.* at 634.

8. The situation is particularly acute when the information is as damning as is here the case. This court has previously noted in dicta that an unsubstantiated statement that a defendant is a major drug dealer would be an inappropriate factor in a judge's imposition of sentence, *Commonwealth v. Cruz,* 265 Pa.Super. 474, 402 A.2d 536 (1979) (objection held waived); *Commonwealth v. Smith,* 250 Pa.Super. 537, 378 A.2d 1278 (1977) (ineffectiveness claim not properly preserved), and other jurisdictions have explicitly so held. *United States v. Allen,* 494 F.2d 1216 (3d Cir.), *cert. denied sub nom. Liles v. United States,* 419 U.S. 852, 95 S.Ct. 94, 42 L.Ed.2d 83 (1974); *United States v. Weston,* 448 F.2d 626 (9th Cir. 1971). This is not, therefore, a case in which the information was so innocuous as to be insignificant in the sentencing decision.

has no cause to complain. In *Commonwealth v. Bethea*, 474 Pa. 571, 379 A.2d 102 (1977), our supreme court formulated the following standard of review:

"In deciding whether a trial judge considered only permissible factors in sentencing a defendant, an appellate court must, of necessity, review all of the judge's comments. Moreover, in making this determination it is not necessary that an appellate court be convinced that the trial judge in fact relied upon an erroneous consideration; it is sufficient to render a sentence invalid if it reasonably appears form the record that the trial court relied in whole or in part upon such a factor." *Id.*, 474 Pa. at 580, 379 A.2d at 106–07.

Although *Bethea* involved the consideration of a defendant's failure to plead guilty, I believe the standard of review applicable in the instant situation. Thus, all pertinent comments of the sentencing judge must be examined to determine if it reasonably appears that the improper information was relied upon.

Subsequent to pronouncing sentence, the court noted as follows:

"Mr. Schwartz [APPELLANT], it is obvious from the recital of the facts which I have had that you were not an innocent bystander here or an occasional person [*sic*]; that you were engaged in the business of drug traffic and this is something that–in fact, the quantities that you were selling and the frequency of the sales make it very apparent to this Court that you were a dealer.

Whether that appears to you to be a very serious offense or not is something I leave to your conscience.

Nevertheless, let me say to you, like a ripple, for every quaalude that you sold or for every bit of marijuana that you sold, that could have had far–reaching effects touching the lives of many, many people.

And for that reason, I cannot take your offense lightly. Had it not been for the fact that there was a plea bargain made here, I would have placed you in prison.

I have made a large fine because I think the enormity of this crime deserves a large fine. You were engaged in the narcotic traffic, and therefore, I feel that just placing you on county probation or giving you a minimal fine is not commensurate with the seriousness of the offense that you have committed." (N.T. 13–14).

This statement of record satisfies the requirements of *Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140 (1977) and does not reflect a reliance upon the agents' information supplied pursuant to consideration of the plea bargain. Appellant does not challenge the validity of his plea to eight counts of delivery of controlled substances or the amounts of those substances involved. Additionally, it is to be noted that the sale and delivery of these substances occurred over a relatively short period of time. Faced with these record facts, I believe that there is ample support for the imposed sentence, which was well within the terms of the accepted plea bargain. Indeed, the probation was expressly bargained for and the permissible fine limits of the plea bargain extended to $120,000.[9]

I would affirm the judgment of sentence.

9. Appellant also argues that the court failed to adhere to Section 1326 of the Sentencing Code, 18 Pa.C.S. § 1326(c) and (d), and Pa.R.Crim.P. 1407(c), by neither ensuring that he was capable of paying the fine imposed nor considering the burden placed on appellant by the allegedly excessive amount. I find little merit in this contention because appellant waived the pre–sentence report which presumably would have included such information. Moreover, counsel for appellant had an opportunity to elaborate on appellant's financial background and failed to do so, preferring instead to state solely his education, occupation, and salary. The objection is therefore ill–founded. I would note, however, that the $10,000 fine was well within the limits of the court's discretion, since appellant could have been ordered to pay a fine of $15,000 for each of the eight counts to which he entered a guilty plea. 35 P.S. § 780–113(f)(2).